UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TINSTAR COMMUNICATIONS, L.P., § | | |
| GEORGE "LEWIS" PARSONS § | | |
| As Beneficial Owner and as Representative § | | |
| of GUNNER, INC. and GUNNER, INC., § | | |
| § | | |
| Plaintiffs, § | | |
| § | | |
| v. § | CIVIL ACTION NO. 3:07-CV-0169-B | |
| § | | |
| ROBERT S. HARP and HARP § | | |
| COMMUNICATIONS, LLC, § | | |
| § | | |
| Defendants. § | | |

## MEMORANDUM ORDER

Before the Court is Defendant Robert S. Harp's Rule 12(b)(6) Motion to dismiss (doc. 22). The Court DENIES the motion for the reasons stated below.

### I. Background

Plaintiff TinStar Communications, L.P. ("Tinstar") is a Texas limited partnership. (Pls.' First Am. Orig. Compl. ["Compl."] ¶ 4). Plaintiff Gunner, Inc. ("Gunner") is TinStar's general partner, and Plaintiff George "Lewis" Parsons ("Parsons") is the beneficial owner and sole shareholder of Gunner. (*Id.* at ¶¶ 1, 6). Plaintiffs allege that on January 19, 2006 they entered into a License Agreement with Defendants Harp Communications, LLC and Robert S. Harp ("Harp") whereby Plaintiffs agreed to provide Defendants a license for the sale of voice-over internet services in exchange for $350,000. (*Id.* at ¶ 10). Plaintiffs claim that they fully performed under the License Agreement but that Defendants failed to make good on their end of the bargain. (*Id.* at ¶ 11). They allege that the two checks Harp made out to Gunner in the total contract amount of $350,000 were

1

returned for insufficient funds.  (*Id.* & Ex. B).  Plaintiffs state that they notified Defendants of the delinquency but that Defendants have refused to pay for the license.  (*Id.* at ¶ 11 & Ex. C).

On January 26, 2007 Plaintiffs initiated this action against Defendants, bringing claims for breach of the License Agreement and for promissory estoppel.  In Plaintiffs' original complaint, TinStar was designated as a corporation.  On February 28, 2007, Plaintiffs moved to amend their complaint, pointing out that while the License Agreement refers to "Tinstar Communications, Inc.", that designation is a misnomer because TinStar is actually a limited partnership and has never existed as a corporation.  The Court granted Plaintiffs leave to file an amended complaint substituting "TinStar Communications, L.P." in place of "TinStar Communications, Inc."

On March 14, 2007, Harp filed a motion to dismiss Plaintiffs' First Amended Original Complaint on the basis that none of the Plaintiffs were parties to the License Agreement.  Harp points out that "TinStar Communications, Inc." heads the License Agreement and that Parsons signed the agreement on behalf of "TinStar Communications, Inc." as its President and CEO.  Harp argues that because "none of the Plaintiffs are parties to the contract, none of the Plaintiffs have the right to complain of a breach thereof."  (Mot. Dismiss at 2).  Plaintiffs respond by arguing that Harp's motion to dismiss is untimely because it was filed after Harp filed an answer; that TinStar Communications, L.P. is properly identified in the first paragraph of the License Agreement; that Harp ratified the terms of the License Agreement by drafting personal checks made payable to Gunner; and that Harp has unclean hands because he violated § 31.06 of the Texas Penal Code by bouncing two personal checks in the amount of $350,000.  Harp did not file a reply to Plaintiffs' response brief.  Harp's motion to dismiss is accordingly ripe for review and determination.

## II. Standards for Dismissal Under Rule 12(b)(6)

Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). The Court liberally construes the complaint in the plaintiff's favor, and all pleaded facts are taken as true. *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th Cir. 1986). Unless it appears beyond doubt that the plaintiff cannot prove any set of facts entitling it to relief, the complaint should not be dismissed. *Conley v. Gibson*, 355 U.S. 42, 45 (1957).

## III. Analysis

Harp places much emphasis on the fact that "TinStar Communications, Inc." appears in the caption to the License Agreement in support of its argument that "TinStar Communications, Inc." is a party to the agreement but "TinStar Communications, L.P." is not. Texas courts, however, attach greater weight to the operative clauses of a contract than to captions or titles. *See Enters. Leasing Co. of Houston v. Barrios*, 156 S.W.3d 547, 549 (Tex. 2004); 14 TEX. JUR. 3d § 234 (Feb. 2007). It is true that the first operative clause of the License Agreement, which recites the subscribing parties, lists "TinStar Communications, Inc." as a party in typewritten language. (Compl. at Ex. A). But Harp overlooks the fact that the typewritten word "Inc." is stricken through and replaced in handwriting with "LP". Under Texas law an interlineation forms part of a contract in the absence of an allegation that such an alteration was inserted improperly. *See Nelson v. Downtain*, 265 S.W. 135, 140 (Tex. Comm'n App. 1924), *modified on other grounds*, 268 S.W. 731 (Tex. Comm'n App. 1925) ("Where the interlineations are not challenged as fraudulent or as inserted without warrant, they are part of the contract. They are incorporated into the body of the contract and are subject to the same rules of contract as other words and phrases."); 14 TEX. JUR. 3d at § 234

3

("If so intended by the parties, interlineations will be deemed to be part of a written contract and will stand on an equal footing with the other parts of the instrument."). Here Harp makes no charge that the insertion of the "LP" designation was in any way improper or that the change was made subsequent to the execution of the agreement. *See McKenzie v. Barrett*, 98 S.W. 229, 232 (Tex. Civ. App. 1906, writ dism'd) (defendant has the burden to prove that interlineation was made after the execution of a contract). Thus, contrary to Harp's contention, the copy of the License Agreement attached to Plaintiffs' First Amended Complaint suggests that TinStar Communications, L.P. was in fact a party to that agreement, giving TinStar standing to sue upon it.

Harp also argues that Plaintiffs Gunner and Parsons lack standing to sue for breach of the License Agreement because they are not named as parties to the agreement. Gunner is TinStar's general partner, and, as such, it may sue for the benefit of TinStar. *See R&R White Family Ltd. P'ship v. Jones*, 182 S.W.3d 454, 458 (Tex. App. – Texarkana 2006, no pet.); 57 TEX. JUR. 3d § 14 (1997) ("A partnership may sue or be sued in the partnership name, as well as in the names of the partners[.]"). Parsons is the sole shareholder of Gunner, a corporation. While a sole shareholder of a corporation lacks standing to sue in his own name and for his own benefit on a cause of action that belongs to the corporation, a sole shareholder may bring suit in a representative capacity for an incapacitated corporation. *See El T. Mexican Rests., Inc. v. Bacon*, 421 S.W.2d 247, 251 (Tex. App. – Houston [1st Dist.] 1995, writ denied). Here Parsons does not purport to sue in his individual capacity but rather as representative of Gunner, and Harp has challenged Gunner's capacity in his answer. (Harp's Orig. Answer ¶ 4) ("Defendant specifically avers that Gunner, Inc. is not a corporation in good standing and does not have the capacity to sue."). Accordingly, construing Plaintiffs' complaint liberally in Plaintiffs' favor, the Court finds that Harp has failed to demonstrate

4

as a matter of law that any of the Plaintiffs lack standing to pursue this action at this time.

### IV. Conclusion

For the reasons explained above, the Court DENIES Harp's Rule 12(b)(6) motion to dismiss.

**SO ORDERED**.

**SIGNED May 8th , 2007**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE